| | |
|---|---|
| **RAICHELLE CARTWRIGHT,** ) <br> ) <br> PLAINTIFF, ) <br> ) <br> vs. ) <br> ) <br> **CEVA LOGISTICS U.S., INC.,** ) <br> ) <br> DEFENDANTS. ) <br> ) | Case No: _____ <br><br> **JURY DEMAND** |

# COMPLAINT

Plaintiff Raichelle Cartwright ("Plaintiff" or "Ms. Cartwright"), by and through counsel of record, files her *Complaint* against CEVA Logistics U.S., Inc. ("Defendant," "CEVA Logistics," or "CEVA"), and alleges as follows:

## I. INTRODUCTION

1. This is a civil action to make whole the Plaintiff for denial and interference with the exercise of rights guaranteed by Title VII of the Civil Rights Act of 1964 ("Title VII"), including the right to be free from discrimination against her on account of Plaintiff's race, free from retaliation for opposition to unlawful actions, and free from a hostile work environment.

## II. PARTIES

2. Plaintiff at all times relevant to this *Complaint,* resided in Murfreesboro, Tennessee.

3. Defendant CEVA Logistics U.S., Inc is a corporation, with its principal corporate address at 15350 Vickery Dr., Houston, Texas 77032. At the time of the events subject of this

1

*Complaint* herein, Defendant regularly did business in the Tennessee and employed more than 50 persons in the said area at the time of the facts that form the basis of this *Complaint*.

4. Valid service of process may be obtained on Defendant CEVA Logistics U.S., Inc. at 2908 Poston Ave, Nashville, Tennessee 37203.

### III. JURISDICTION AND VENUE

5. Plaintiff brings this action under 28 U.S.C. § 1331, alleging the original jurisdiction of this Honorable Court over this private suit to enforce federal civil rights and employment law protections.

6. Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful employment practices occurred within Rutherford County, Tennessee where Plaintiff formerly worked, where Plaintiff suffered the unlawful employment practices and resultant damages, and where Plaintiff would have continued to be employed by Defendant in the absence of its unlawful employment practices.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff has met all procedural requirements for filing this Complaint, including administrative exhaustion required for jurisdiction in this Court.

8. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and did so within 300 days of the actions of which she complained. Plaintiff filed her Charges for violations of Title VII on September 22, 2023 (Charge No. 4994-2023-04113 On August 15, 2024, Plaintiff received her *Right to Sue Notice* from the EEOC for the aforementioned Charges and therefore concluded the process of exhaustion requirements with the EEOC. Accordingly, this lawsuit and supporting Title VII claims are

properly and timely filed within ninety (90) days of issuance by the EEOC of Plaintiff's Notices of Right to Sue Letter on August 15, 2024). **(Exhibit 1, "Notice of Right to Sue").**

### V. STATEMENT OF FACTS

9. Plaintiff Raichelle Cartwright was Business Implementation Manager at CEVA Logistics from July 20, 2022, until September 20, 2023, when CEVA Logistics terminated Ms. Cartwright's employment.

10. Ms. Cartwright is an African American female.

11. Ms. Cartwright has no disciplinary records for her entire employment with CEVA.

12. Mark Hoelzer ("Mr. Hoelzer"), an upper-level manager at CEVA, worked on the same project that Ms. Cartwright was working on as the Business Implementation Manager.

13. On February 16th, 2023, Ms. Cartwright was attending a meeting with a vendor, Mr. Hoelzer, and other CEVA Logistics staff when Mr. Hoelzer interrupted Ms. Cartwright in the middle of a sentence to tell her to "stop talking."

14. Jennifer Patterson ("Ms. Patterson"), the department head at the time, messaged Ms. Cartwright on Microsoft Teams ("Teams").

15. Ms. Patterson told Mr. Hoelzer's conduct was unacceptable and that she would address it with him.

16. On March 20th, 2023, Ms. Cartwright attended a meeting with Mr. Hoelzer and other CEVA staff to discuss HR recruitment.

17. During the meeting, Mr. Hoelzer stated that he would meet with Dimyka Roberts ("Ms. Roberts"), the HR manager.

18. When Ms. Cartwright requested to be present at the meeting because her duties required her to work closely with HR recruitment, Mr. Hoezler denied the request.

19. Later on March 20th, 2023, Ms. Cartwright emailed Mr. Hoelzer and Ms. Roberts, asking to be included in the meeting.

20. Ms. Roberts agreed to Ms. Cartwright being included in the meeting.

21. Mr. Hoelzer again denied the opportunity to attend.

22. Mr. Hoelzer never emailed an update on the meeting although he stated that he would.

23. On March 23rd, 2023, Ms. Cartwright attended an internal quality team meeting with Mr. Hoelzer and other CEVA staff.

24. At that meeting, Mr. Hoelzer responded twice to Ms. Cartwright's statements with "That's not correct," despite Bob Scott ("Mr. Scott") replying both times stating that Ms. Cartwright was correct.

25. The third time Ms. Cartwright made a statement, Mr. Hoelzer states that she was not correct and added, "Raichelle, you do not always have to be right all the time."

26. Because Mr. Hoelzer had made disrespectful comments on numerous occasions in front of team members and vendors, Ms. Cartwright became stressed.

27. After the meeting on March 23rd, 2023, Ms. Cartwright requested to meet with Mr. Hoelzer and Mr. Scott.

28. During the meeting, Ms. Cartwright asked Mr. Hoelzer to stop speaking condescendingly and making disrespectful comments to her.

29. During the meeting with Mr. Hoelzer and Mr. Scott, Mr. Scott did not address Mr. Hoelzer's behavior.

30. On March 24th, 2023, Ms. Cartwright spoke with Ms. Patterson about Mr. Hoelzer's disrespect.

31. Ms. Patterson stated that she would talk to Mr. Hoelzer.

32. On April 19th, 2023, Ms. Cartwright communicated with Mr. Hoelzer on Teams.

33. Ms. Cartwright confirmed with Mr. Hoelzer that he would meet with Ms. Cartwright and a customer the following Thursday.

34. Despite the confirmation, Mr. Hoelzer did not show up at the meeting.

35. When the workday was nearly over on April 19th, 2023, Mr. Hoelzer finally joined the call and disrespectfully commented on Ms. Cartwright's attempts to contact him via Teams.

36. Mr. Hoelzer stated this in front of the customer, which undermined and humiliated Ms. Cartwright.

37. Although Mr. Hoelzer and Jeffery Stewart ("Mr. Stewart") attempted to file a complaint to their lead project manager and senior manager regarding Ms. Cartwright assigning project tasks to them thought to be outside the scope of employment, the complaint was not sustained because it was found that Ms. Cartwright appropriately assigned the tasks to Mr. Hoelzer and Mr. Stewart.

38. On June 28th, 2023, Ms. Cartwright visited the job site where her project team worked.

39. Ms. Cartwright had to get the operations managers involved for Mr. Hoelzer and Mr. Stewart to complete the assigned tasks.

40. On June 29th, 2023, Ms. Cartwright was with a customer who waited over thirty minutes for a meeting with her, Mr. Hoelzer, and other CEVA employees.

41. Despite Mr. Hoelzer and Mr. Stewart having ample notice of the meeting, which was training necessary for members of the operation and quality team to attend, Mr. Hoelzer and Mr. Stewart repeatedly ignored Ms. Cartwright's attempt to start the meeting.

42. After several attempts and apologies to the customer, Ms. Cartwright raised her voice to get the group's attention, but Mr. Hoelzer and Mr. Stewart left the meeting.

43. Later on June 29th, 2023, an HR employee told Ms. Cartwright that Mr. Hoelzer and others were about to write a complaint about her being unprofessional and yelling in the office.

44. Shortly after this conversation, the HR employee told Ms. Cartwright she should write an email complaint because, in her opinion, Ms. Cartwright was being subjected to "backdoor retaliation."

45. Other CEVA employees, including supervisors and CEVA customers and vendors, noticed and commented on Mr. Hoelzer's disrespect towards Ms. Cartwright throughout her time working on the project.

46. Mr. Hoelzer did not disrespect the white employees assigned to the project.

47. When Ms. Cartwright complained to HR that she was being harassed because of her race, the ethics committee ended its investigation by telling her that the results "would be evident" to them and to let them know if she was feeling harassed or like she was being retaliated against.

48. Shortly after Ms. Cartwright's complaint to HR, Ms. Cartwright was asked to meet with HR.

49. An HR employee at the meeting told her that Mr. Hoelzer was not discriminating against Ms. Cartwright because Mr. Hoelzer had hired an African American woman, April Booker ("Ms. Booker").

50. Ms. Booker told Ms. Cartwright that she had known Mr. Hoelzer for 12 years and had been intimate with him throughout the 12 years.

51. Ms. Booker also told Ms. Cartwright that she "does not like her own kind," meaning African American people.

6

52. Additionally, Ms. Booker stated that whenever Mr. Hoelzer is fired from a job, he "takes [Ms. Booker] with him."

53. On June 30th, 2023, Ms. Cartwright emailed Shawn Stewart, CEVA President and Managing Director, stating that Mr. Hoelzer was constantly disrespecting her and other African American team members.

54. In the email, Ms. Cartwright also stated her concern that CEVA was defending Mr. Hoelzer's discrimination by stating that Mr. Hoelzer could not be racist because he hired an African American woman.

55. Other African American team members have filed complaints alleging racial discrimination by Mr. Hoelzer with no resolution from HR or management.

56. When Mr. Hoelzer or Mr. Stewart was unhappy with Ms. Cartwright, members of the operation team under their supervision treated her in an unprofessional and hateful manner, ignoring her and refusing to complete tasks necessary for the project.

57. During her employment, Ms. Cartwright visited the Netherlands for work.

58. During her time in the Netherlands, Ms. Cartwright was segregated from the other CEVA employees along with two other African American employees. CEVA booked rooms for Ms. Cartwright and the two other African American employees at a hotel that was under-construction and over an hour from the project site while the other employees on the trip, who were not African American, stayed at a nicer hotel close to the project site, where CEVA employees and clients have historically stayed on their trips.

59. On July 3rd 2023, Ms. Cartwright emailed HR about several events where she was discriminated against, including the June 21st, June 27th, June 28th, and the hotel event in the Netherlands.

60. Even after she made these complaints, the HR department nor the management team took action to stop its employees from discriminating against employees based on race.

61. CEVA allowed its employees to continue creating a hostile work environment

62. CEVA allowed its employees to engage in pervasive discrimination against Ms. Cartwright.

63. On September 20th, 2023, shortly after Ms. Cartwright complained to HR that she was being discriminated against because of her race, her employment with CEVA was terminated.

## VI. CAUSES OF ACTION

### Count 1

### VIOLATION OF 42 U.S.C. § 1981

64. . Plaintiff realleges all previous paragraphs and incorporates those paragraphs by reference as though fully set forth herein.

65. 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. This includes the making of, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

66. Plaintiff wished to make, continue, and enforce a contract with employer when she attempted to hold the company to its own internal employee conduct standards.

67. In committing the acts described herein, Plaintiff was denied the same, and other benefits, privileges, terms and conditions due her, due to or motivated by her race as an African American. She was also subjected to extreme harassment due to her race.

68. As such, Defendants individually and collectively violated 42 U.S.C. § 1981.

69. Plaintiff suffered damages as a result.

## Count 2

### VIOLATION OF TITLE VII– RACE DISCRIMINATION

70. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

71. Plaintiff is African American.

72. While Caucasian employees were treated respectfully in the workplace, African American employees were treated disrespectfully.

73. Defendant discriminated against Plaintiff on the basis of her race in violation of Title VII.

74. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

75. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count 3

### VIOLATION OF TITLE VII- HARASSMENT

76. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

77. Harassment is unwelcome conduct that is based on race, color, religion, sex, or national origin. It becomes unlawful where enduring offensive conduct becomes a condition of continued employment or the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

78. Ms. Cartwright had to endure disrespect, ridicule, mockery, insults, and segregation.

79. Ms. Cartwright's supervisors were the people who harassed her.

80. Ms. Cartwright reported all the discrimination to human resources in great detail, and no remedial action was taken.

81. Defendant harassed Plaintiff in violation of Title VII.

82. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

83. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count 4**

**VIOLATION OF TITLE VII-RETALIATION**

84. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

85. An employer may not fire, demote, harass, or otherwise retaliate against an individual for filing a complaint of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination.

86. Ms. Cartwright was terminated due to her reports of harassment and discrimination.

87. Defendant retaliated against Plaintiff in violation of Title VII.

88. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

89. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## VII. RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and actual damages;

3. Reinstatement and/or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated damages;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled under Title VII and any other statutory or common law.

## VIII. TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues.

**Respectfully submitted,**

/s/ Adam Rodrigues
Adam Rodrigues, BPR#040141
Adam Rodrigues Law PLLC
4183 Franklin Rd. Ste B1 Box 209
Murfreesboro, TN 37128
Tel: 615-270-2074

Fax: 615-709-5770
adam@adamrodrigueslaw.com